UNITED STATES of America,
Plaintiff–Appellee,

v.

Reginald James CAUSEY,
Defendant–Appellant.

No. 86–3469.

United States Court of Appeals,
Fifth Circuit.

Dec. 17, 1987.

Burton P. Guidry, Baton Rouge, La. (court appointed), for defendant-appellant.

Richard B. Launey, Asst. U.S. Atty., Stanford O. Bardwell, Jr., U.S. Atty., Baton Rouge, La., Mervyn Hamburg, Atty., App. Sect., Crim. Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before CLARK, Chief Judge, GOLDBERG, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, JOHNSON, WILLIAMS, GARWOOD, JOLLY,

**1180**

HIGGINBOTHAM, DAVIS, and JONES, Circuit Judges.[*]

GEE, Circuit Judge:

Today the issue before our court en banc is whether a voluntary confession to bank robbery, given after reiterated *Miranda* warnings, should be excluded from evidence because the police had arrested the defendant under an outstanding arrest warrant for a different crime, intending to question him solely about the robbery to which he confessed. Our panel held that although the officers arrested Causey on an admittedly valid warrant, and although they did so only after specifically verifying the warrant's validity with the judge who had issued it, their true and sole intent in making the arrest—to interrogate him about a different and more serious crime—rendered his confession to that crime "as tainted as if it had been obtained by coercion, brutality, or any other unconstitutional lever used to pry a confession from him." *U.S. v. Causey*, 818 F.2d 354, 362–63 (5th Cir.1987). Thus to the Constitution's requirement that to be admitted in evidence a confession must be knowing and voluntary,[1] and to the Supreme Court's that, if custodial, it be given only after the *Miranda* formula of rights and warnings had been recited, our panel added an additional requirement that the police who took the confessor lawfully into custody must not have done so with an improper motive —whether their *actions* in the premises would have been any different in the absence of such a motive or not. The panel held squarely that conduct otherwise lawful in every respect on the part of police is rendered *unconstitutional* by their irregular subjective intent alone. Sensing a possible conflict between this holding and sound constitutional policy, as well as possible inconsistency with the decision of the Supreme Court in *Scott v. United States*, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978),[2] we took the case en banc; and we now reverse the action of the panel and affirm that of the trial court. The facts are fully and accurately set out in the panel opinion, and we reiterate them only so far as is necessary to an understanding of our holding.

*Facts*

An anonymous tipster identified appellant Causey as the robber of a Baton Rouge bank, but the city police believed that they lacked probable cause to arrest and interrogate him about that crime.[3] Casting about for means to apprehend and question him, they discovered an outstanding warrant for Causey's arrest, issued some years earlier when he had failed to appear in court to answer a petty theft charge. After verifying the warrant's continued validity with the issuing judge, the city officers arrested Causey, gave him *Miranda* warnings, interrogated him about the bank robbery, and called in the FBI. Some time and several *Miranda* warnings later, Causey made a voluntary confession of robbing the bank.

At a hearing on Causey's motion to suppress the confession, one of the city officers testified that their *only* reason for arresting Causey on the warrant was "to take him downtown and continue [the] investigation of the bank robbery...." Convicted by a jury, Causey appealed and our panel reversed for the reason given earlier: that the exclusive motive to question him about the robbery with which the misdemeanor warrant was executed rendered the arrest "pretextual" and "tainted" his confession despite the *Miranda* warnings that had preceded it and despite its voluntary character. On both reason and authority, we disagree.

*Reason*

Any consideration of the facts in this appeal must commence with a recognition

---

[*] Judge Hill was a member of the court that heard oral argument in this case, and he participated in the consideration of the case, but due to his death on October 19, 1987, Judge Hill did not participate in this decision.

1. United States Constitution, Amendment V.

2. Subjective intent alone "does not make otherwise lawful conduct illegal or unconstitutional." 436 U.S. at 136, 98 S.Ct. at 1723.

3. We assume that their belief was correct, for the United States does not contend otherwise.

that the police who arrested Causey were empowered to do so by a valid warrant and that they took no action that they were not legally authorized to take. Nor is it suggested that anything improper occurs when police officers question a suspect who is under arrest for one crime about others of which he may be guilty or have knowledge.[4] Thus, on the reasoning of the panel opinion, had the arresting police done exactly the same things with Causey from start to finish as they did in fact, but had they in addition entertained a subjective intention at the time of his arrest to question him about the lesser offense for which the arrest warrant issued as well as about the bank robbery, his confession to the robbery would have been properly admitted at his trial. But since one of the arresting officers testified that their *only* purpose in arresting Causey was to investigate the robbery, the panel declares that his confession is just as tainted as if it had been coerced by torture. For several reasons, we decline to countenance such a rule.

In the first place, the panel's rule turns on an irrelevant intent: that of the police. It is the *prosecutor's* intent that determines whether one who has been arrested on a warrant is prosecuted for that offense, not that of the police; and the panel's holding is made ironic by the fact Causey *was* prosecuted, convicted, and punished for the non-appearance offense on which the warrant was issued and for which he was "pretextually" arrested. It is difficult to see why a lack of police interest in seeing him prosecuted on the non-appearance warrant—an indifference that had neither force, basis nor consequence—should be held to be of such an overmastering effect. Especially is this so when the *actions* taken by the police were entirely consistent with the results in both prosecutions: Causey was convicted of both non-appearance (in state court) and of bank robbery (in federal court) and punished for each offense. The only supposed

defect in the entire process was a defective intent on the part of the police regarding a decision that was not theirs to make, a lack of interest by them in the prosecution of Causey on the offense for which the warrant issued—yet a lack that was, as things fell out, irrelevant and devoid of consequence.

In the second, it is hard to see what police misconduct it is that is sought to be deterred by such a ruling: Is it acting to execute a valid warrant? to investigate a bank robbery by all means at hand not unlawful? or perhaps to question a suspect without coercion or force after giving proper *Miranda* warnings? In fact, the only conduct likely to be deterred by such a rule as that confected by the panel would be a prosecutor's act of leniency in omitting to prosecute the less serious offense on which the warrant had issued, a matter of small consequence to the police or prosecutor and of further *detriment* to the arrestee.[5]

And finally, one may well question the motivational requirement which the panel undertakes to add to the qualifications laid down by the Supreme Court in *Miranda* for admissibility of a confession: voluntariness and administration of the warnings required by that decision. To inject a new constitutional issue of subjective police intent into every case in which a suspect is arrested for one offense and later confesses to another (or others) seems to us unwarranted and to rest on no apparent constitutional basis or foundation. A consideration of that supposed basis and of the cases discussed by the panel opinion appears in the following section.

### Authority

The panel opinion maintains, in reliance on what it describes as a "continuing line of Fifth Circuit authority," that unless an arrest is made with the appropriate subjective intent, it is invalid and whatever results from it is "tainted." The line which it

---

4. Such a taboo should have strong reasons justifying it, given the common and general knowledge that a high percentage of the crime in our society is committed by a relatively small number of multiple offenders.

5. Or, a cynic might suggest, the making by police of another such admission of "pretextual" motive as occurred in this case.

offers, however, consists of three cases, the most recent of which is over nine years old and the earliest of which was handed down in 1968.[6] Since the most recent of these was handed down in 1978, however, the Supreme Court—in three cases of its own—has made plain that it is irrelevant what subjective intent moves an officer in taking such an action as this; what signifies is the officer's *actions*, objectively viewed in light of the circumstances confronting him. In the face of these clear pronouncements, we are not authorized to persist in our former rule, if such it was, to the contrary.

The first of the Court's relevant triad is *Scott v. United States*, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978).[7] There a support of the proposition that "the ulterior motivations of the officer will not ordinarily void an otherwise *legal* stop or arrest." *Id.* at 545 (footnote omitted). Such is Causey's circumstance.

---

6. This "continuing line of Fifth Circuit authority," 818 F.2d at 361, is drawn with vanishing ink; the closer one looks at the cases, the less meets the eye. The first, *Amador–Gonzalez v. United States*, 391 F.2d 308 (5th Cir.1968), *did not* boldly or generally hold "pretextual arrests unconstitutional." 818 F.2d at 361. Two of the three members of the *Amador–Gonzalez* panel concurred only in the *result* that the search in that case was unreasonable. 391 F.2d at 315. As Judge Wisdom noted, "they [Judges Coleman and Godbold] concur in the result ... [but] would refrain from passing upon the lawful scope of a search incident to a *valid* traffic arrest (emphasis added)." *Id.* In defining the boundaries of his holding, Judge Wisdom continues, "The pretextual motivation did not vitiate the validity of the arrest.... Proof that a traffic arrest was only a pretext to search for evidence of another offense is significant legally *only because it bears on the reasonableness* of the search ... the emphasis is on the objective relationship between the nature of the offense and the nature (circumstances) of the search, *rather than on the motivational cause of the arrest* (emphasis added)." *Id.* With respect to the situation before us, the "nature" of Causey's confession is reasonable; he was given *Miranda* warnings several times before he confessed. Under the narrow terms defined by *Amador–Gonzalez,* Causey's confession is hardly foreclosed.

When one moves to *United States v. Tharpe*, 536 F.2d 1098 (5th Cir.1976) (en banc), the second in the group, the force of *Amador–Gonzalez* is reduced to support in a string-citation. *Id.* at 1101. In fact, the holding in *Tharpe* actually supports a broad use of an objective standard in analyzing police intent with respect to conducting a search. And the third case, *United States v. Cruz,* 581 F.2d 535 (5th Cir.1978) (en banc) held inadmissible the testimony of illegal aliens who occupied an automobile that the court believed to have been stopped without either a warrant or probable cause in a manner objectively *illegal:* "Deputy Muldraw was hunting for illegal aliens and stopped Rhodes's automobile in order to inspect its occupants ... the defendant was the victim of the *illegal* stop...." *Id.* at 542 (emphasis added).

Although *Amador–Gonzalez* is cited in that opinion, *id.* at 539, 541, ironically, the only discussion of *Amador–Gonzalez* comes in dissent, *id.* at 545–46 (Tjoflat, Brown, in part, Ainsworth and Vance dissenting), where it is cited in

7. *Scott* came to the attention of our court at a time when petition for rehearing was pending in *Cruz v. United States*, 581 F.2d 535 (5th Cir. 1978), the last of the panel's "line" of cases. It provoked a dissent from the denial of that petition, penned by Judge Tjoflat, then of our circuit, and joined by four other judges. In part, his dissent observed:

[T]he gist of my prior dissenting argument is that the law of this circuit teaches that the motives of an officer are irrelevant to the determination whether a stop or arrest effected by him is constitutionally valid. If the officer has objective justification for the stop or arrest, it is valid. The majority, however, looked to the subjective motivations of the officer and held invalid the stopping of a vehicle driven by the defendant and containing illegal aliens....

The Supreme Court squarely rejected the majority's reasoning in its recent opinion in *Scott v. United States,* 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978). In *Scott,* the Court enunciated the standards by which compliance with the minimization requirement for wiretapping and electronic surveillance under title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. 2510–2520 (1976), is determined. The Court equated the standards under the Act to those under the fourth amendment to the Constitution *id.* 436 U.S. at 136, 98 S.Ct. at 1724, and reaffirmed the constitutional principle that "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Id.* 436 U.S. at 138, 98 S.Ct. at 1723. Motives, the Court continued, are not irrelevant to the suppression inquiry, for they "may have some relevance in determining the propriety of applying the exclusionary rule.... This focus on intent, however, becomes relevant *only after* it has been determined that the Constitution was in fact violated." *Id.* 436 U.S. at 139 n. 13, 98 S.Ct. at 1724 (emphasis added).

central complaint on appeal by convicted narcotics dealers was that police had deliberately disregarded the minimization requirements of wiretap law, intercepting virtually all calls on the tapped line when only 40 percent of them were drug-related. The district court ordered suppression of the intercepted calls and all derivative evidence because it was offended by the policemen's state of mind, relying largely on the fact that they knew of the minimization requirement but made no attempt to comply with it, an attitude which the court stigmatized as " 'unreasonable ... *even if every intercepted call were narcotic related.' "* 436 U.S. at 134, 98 S.Ct. at 1721 (quoting the district court opinion; emphasis added). A more categorical statement can scarcely be imagined of resolution on the part of the court to punish the public for naughty intent on the part of the police—whether or not that mere intent produced any discernible consequence—by freeing the criminal.

In the course of upholding a reversal of the district court, the Supreme Court emphatically rejected, albeit in dicta as regards the Fourth Amendment, such a subjective view. Instead, in passing upon such matters, it espoused an objective assessment of the officer's actions for legality and a rejection of attaching consequences to his mere subjective states of mind:

> "[A]lmost without exception in evaluating alleged violations of the Fourth Amendment the Court has first undertaken an objective assessment of an officer's actions in light of the facts and circumstances then known to him. The language of the Amendment itself proscribes only "unreasonable" searches and seizures. In *Terry v. Ohio,* 392 U.S. 1, 21–22, 20 L.Ed.2d 889, 88 S.Ct. 1868 [1879–80], 44 Ohio Ops.2d 383 (1968), the

Court emphasized the objective aspect of the term "reasonable."

. . . .

> We have since held that *the fact that the officer does not have the state of mind* which is hypothecated by the reasons which provide the legal justification for the officer's action *does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.* In *United States v. Robinson,* 414 U.S. 218, 38 L.Ed.2d 427, 94 S.Ct. 467, 66 Ohio Ops.2d 202 (1973), a suspect was searched incident to a lawful arrest. He challenged the search on the ground that the motivation for the search did not coincide with the legal justification for the search-incident-to-arrest exception. We rejected this argument: "Since it is the fact of custodial arrest which gives rise to the authority to search, it is of no moment that [the officer] did not indicate any subjective fear of the respondent or that he did not himself suspect that respondent was armed." *Id.,* at 236, 38 L.Ed.2d 427, 94 S.Ct. 467 [at 477], 66 Ohio Ops.2d 202. The Court of Appeals which have considered the matter have likewise generally followed these principles, *first examining the challenged searches under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers* involved.

436 U.S. at 137–38, 98 S.Ct. at 1723 (emphasis added; footnote omitted).[8]

Next, in *United States v. Villamonte-Marquez,* 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983), the Court reversed our panel and upheld drug convictions resulting from the boarding of a 40–foot sailboat by customs officers to inspect ship's documents, as authorized by 19 U.S.C. § 1581(a), against a contention that in fact

---

Under *Scott* and the law of this circuit as it stood before the en banc opinion in this case, the stop of the defendant's vehicle was constitutionally sound because there were uncontested objective justifications for it. *U.S. v. Cruz,* 587 F.2d 277, 278 (5th Cir.1978) (citations and footnotes omitted).

**8.** At this point the Court cites to various Court of Appeals' opinions, ours being *Dodd v. Beto,*

435 F.2d 868, 870 (5th Cir.1970), where we observed:

> At the trial Officer Hamer did not testify as to his subjective theory of the crime committed during the time he was looking for Dodd. He was seeing Dodd as a "suspicious person." The test of probable cause is not the articulation of the policeman's subjective theory but the objective view of the facts.

the customs officers, accompanied by a local policeman, were following an informant's tip that drugs were aboard and hence could not rely on the statute because their hearts were not pure, being defiled by an intent to apprehend drug smugglers. The Court dismissed the claim in a footnote, reciting that "[t]his line of reasoning was rejected in a similar situation in *Scott* ..., and we again reject it." 462 U.S. at 584 n. 3, 103 S.Ct. at 2577 n. 3.

Finally, in the recent decision of *Maryland v. Macon*, 472 U.S. 463, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985), where officers purchased allegedly obscene materials from so-called "adult" bookstores with marked money, the contention was made that "[w]hen the officer *subjectively intends* to retrieve the money while retaining the magazines, ... the purchase is tantamount to a warrantless seizure." 472 U.S. at 470, 105 S.Ct. at 2783. (emphasis added).

Again, the argument received short shrift:

> This argument cannot withstand scrutiny. Whether a Fourth Amendment violation has occurred "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time," *Scott v. United States*, 436 U.S. 128, 136, 56 L.Ed.2d 168, 98 S.Ct. 1717 [1723] (1978), and not on the officer's actual state of mind at the time the challenged action was taken. *Id.*, at 138 and 139, n. 13, 56 L.Ed.2d 168, 98 S.Ct. 1717 [at 1723 and 1724, n. 13]. Objectively viewed, the transaction was a sale in the ordinary course of business. The sale is not retrospectively transformed into a warrantless seizure by virtue of the officer's subjective intent to retrieve the purchase money to use as evidence.

472 U.S. at 470–71, 105 S.Ct. at 2783.

Given these Supreme Court decisions in cases indistinguishable in principle from today's case, our circuit simply cannot maintain, even were it so inclined, a rule so directly contrary to the Supreme Court's. Again and again, in precisely the present context, the Court has told us that where police officers are objectively doing what they are legally authorized to do—as in arresting Causey pursuant to the valid warrant outstanding against him and interrogating him without coercion after reading him repeated *Miranda* warnings—the results of their investigations are not to be called in question on the basis of any subjective intent with which they acted.

### Conclusion

Our panel's decision to exhume the subjective-intent exclusionary rule of a decade ago—one whose very existence is doubtful and one which, assuming that it did once exist in our circuit, has been bypassed both by the Supreme Court and by our own more recent authorities founded on Supreme Court decisions handed down since then [9]—is untimely. Although the decisions of the Supreme Court are not literally controlling, we think their direction a wise one; and we follow where they lead.

■ In the matter of religious conviction, Elizabeth the Great is said to have remarked that she would make no windows into the minds of men who served her loyally. The relevant principle of the Supreme Court is likewise: so long as police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry.[10] Insofar as such cases as *Amador–Gonzalez*, *Cruz* and *Tharpe*, cited in the panel's opinion, may have sought to lay down a contrary rule for our Circuit, they are overruled. The correct rule is that, while a showing of objectively reasonable good faith on the

---

**9.** See, *e.g.*, *United States v. Basey*, 816 F.2d 980 (5th Cir.1987), holding that where it was undisputed that officers had probable cause to arrest and did arrest a motorist for violation of the state financial responsibility law, any inquiry into their alleged ulterior motivation to question him about a burglary was irrelevant.

**10.** Even in callings far less mundane this is the rule, it being a matter of general theological agreement that the mindset of the minister does not hinder the efficacy of the sacraments.

part of police officers will ordinarily redeem honest errors and prevent the application of the exclusionary rule, in a case where the officers have taken no action except what the law objectively allows their subjective motives in doing so are not even relevant to the suppression inquiry. And the reason lies in the purpose of that rule: to deter *unlawful* actions by police. Where nothing has been done that is objectively unlawful, the exclusionary rule has no application and the intent with which they acted is of no consequence.[11]

■ Causey's complaint that his conviction should be reversed because the subjective intent of the police in arresting him was improper is therefore rejected. Because, however, Causey presented claims for reversal of his conviction that the panel did not address by reason of its disposition of the claim which we decide today, we REMAND to the panel for consideration of those claims.[12]

**PATRICK E. HIGGINBOTHAM,**
Circuit Judge, specially concurring:

I join the majority opinion's conclusion but the force of Judge Rubin's dissent leads me to express caution regarding our holding. There was no evidence that warrants were stored or "warehoused" for a use other than to arrest for the offense charged in the warrants. Moreover, the "stale" warrant was not only valid under state law, the arresting officers returned the warrant to the issuing judge and obtained his permission to execute it before they did so. By its nature the offense of failure to appear did not depend on stale facts but was continuing. We do not decide today the longevity of an issued and unexecuted arrest warrant under the fourth amendment.[1]

The validity of an arrest warrant is encircled by the fourth amendment's requirement that the arrest be objectively reason-

---

11. Part III of the dissent calls up the spectre of police combing the nation by computer to discover somewhere a delinquent parking ticket on the basis of which an arrest warrant can be obtained, an arrest made, and a custodial interrogation about an unconnected crime conducted. Assuming that these concerns are relevant to such a case as this—one in which the police arrested on an outstanding local warrant—a few observations seem in order.

The first is that governments need not authorize arrest for petty offenses and, if they do so, should not be startled if warrants issued pursuant to their authorizations are taken seriously and occasionally executed. Presumably all issued were meant to be executed or the time and effort to issue them would not have been spent. Other means are frequently employed in the case of parking tickets: means, for example, such as seizing or immobilizing the automobile of the offender. It is possible to enforce the law without arresting petty offenders. Should the public become sufficiently exercised about what the dissent views as abuse of such arrest warrants, it can direct such a course of enforcement; it is not necessary for us to read another troublesome, unstated provision into the Constitution to serve such an end.

The second is that Causey had, long before the police apprehended him, forfeited his right to be free from arrest. He was already the object of an arrest warrant; he had been subject to arrest at all times since its issuance; and he can scarcely complain that the police finally got round to executing a valid warrant. The third is that there is no contention before us en banc that his interrogation did not fully comply with

all constitutional requirements, so that for present purposes it must be assumed that the conduct of the police in that regard was impeccable and that Causey has received all that *Miranda* or the Fifth Amendment grants him.

This being so, he is reduced at this juncture to complaining that it was unreasonable for the police to arrest him on an admittedly valid warrant because of the subjective motive which moved them to pick it up and execute it: that he had caught their eye again by robbing a bank. Even so, the dissent would ride to his rescue; and it is this police action that the dissent intones "violated the fourth amendment," thus assuming the answer to the question that it poses.

12. By Circuit rule, the panel disposition is of no further effect, having been vacated by our grant of en banc consideration. In the course of our opinion, we have referred from time to time to Causey's confession as voluntary or uncoerced, the trial court having so concluded. That issue was not before us for adjudication, however; and neither it nor any other upon which neither we nor the panel has yet passed is foreclosed by today's decision. We decide only the issue stated in our opinion's first sentence.

1. *Cf. Sgro v. United States,* 287 U.S. 206, 210, 53 S.Ct. 138, 140, 77 L.Ed. 260 (1932) (deciding that under a section of the National Prohibition Act providing for warrants issued on probable cause "the proof [of probable cause] must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time").

able. The magistrate issuing the arrest warrant here concluded that there was legal cause to arrest for the charged offense. That the police may have been motivated to execute the warrant for reasons extrinsic to the offense ordinarily is irrelevant so long as there is probable cause for the arrest. Viewed objectively the arrest still is for the charged offense. An issued warrant ordinarily lies within the circle of objective reasonableness because probable cause for arrest has been found by a neutral magistrate. However, this is not always the case. Objective facts extrinsic to those of the particular offense for which a warrant is issued may alter the conclusion of reasonableness.

Serious questions abound in the use of otherwise valid warrants to pocket a one-time pass to the strictures of the fourth amendment rather than to prosecute the offense for which probable cause was found. Stated more directly, there is a risk that with the storage and retrieval capability of today's computers, warrants may function in a manner similar to the old general writs of assistance.[2] There is no suggestion that the warrant served in this case was issued or held for any purpose other than its execution for the charged offense. Our conclusion today regarding the relevance of subjective motivation then does not tolerate such a storing of warrants. We decide no issues attending a system of obtaining warrants and "warehousing" them for a purpose other than to arrest for the offense for which probable cause is found. With this reading of the opinion, I concur.

ALVIN B. RUBIN, Circuit Judge, with whom GOLDBERG, POLITZ, RANDALL, JOHNSON, and WILLIAMS, Circuit Judges, joins dissenting:

The police suspected Reginald James Causey of bank robbery but lacked probable cause to arrest him. So they unearthed a seven-and-a-half-year-old bench warrant, long forgotten, for the sole purpose of questioning him about the bank robbery inside a police station where they could keep him in custody; force him to listen, if not to speak; and seek to elicit a confession to the bank robbery. The objective facts surrounding the arrest make it clear that the warrant was used only as a pretext. These same objective facts, without regard to the testimony of the arresting officers about their state of mind, mandate the conclusion that the arrest was but a means to take Causey into custody in order to question him about an offense other than the one for which he was arrested. The issue is not, therefore, as characterized by the majority opinion, whether "conduct *otherwise lawful in every respect* on the part of the police is rendered *unconstitutional* by their irregular subjective intent alone."[1] The majority opinion fails adequately to consider the objective facts, hence misstates the issue and reaches an erroneous conclusion. I, therefore, respectfully dissent.

## I.

The government does not even assert that the police had probable cause to arrest Causey. So what the majority opinion characterizes as their "belief" that they made an arrest without probable cause we may take to be well founded. Thus lacking a sufficient reason to make an arrest, yet desiring to take Causey into custody in order to question him under the coercive force that police-station interrogation would provide, they found a warrant seven and a half years old, issued for failure to appear in city court to answer to a charge that itself could no longer be prosecuted because the statute of limitations had run. Neither the city court judge nor anyone else had ever sought to enforce the warrant. The police never had a practice of following up on such warrants, and in foraging through old records in search of a

---

2. Quiney's Massachusetts Reports, 1761–1772, App. 1, pp. 395–540; 2 Legal Papers of John Adams 106–147 (Wroth & Zobel eds. Boston: 1965).

1. Majority opinion, page 1149, page 1180. The emphasis on "unconstitutional" is in the original. The emphasis on "otherwise lawful" is mine.

warrant against Causey they were not following any established policy. Although the police did indeed testify that their only reason for arresting Causey on the warrant was "to take him downtown and continue [the] investigation of the bank robbery," it is evident from the surrounding facts, even absent that admission, that the police used the warrant as a subterfuge: they arrested Causey to question him about bank robbery, not about his failure to appear in city court.

Causey's arrest simply does not, therefore, present an instance of "otherwise lawful" conduct. Whether or not the police had a subjectively unacceptable intent, they did not have an objectively valid reason to make the arrest. That arrest was therefore an unreasonable seizure in violation of the fourth amendment.

The majority correctly quotes from *Scott v. United States.*[2] Like the majority, I take the words of the Court, reaffirmed in *Maryland v. Macon,*[3] as my beacon:

> [A]lmost without exception in evaluating alleged violations of the Fourth Amendment the Court has first undertaken an objective assessment of an officer's actions in light of the facts and circumstances then known to him.[4]

From a completely objective viewpoint, it was unreasonable for the police officers to ferret out the warrant books, dig out this arrest warrant for an offense that had prescribed, and go out to arrest the person named in the warrant—police conduct that, so far as the record shows, was absolutely without precedent in the Baton Rouge police force.

The Eleventh Circuit has aptly characterized the *Scott* inquiry into objective reasonableness not as an examination of what an officer *could* do, but as an examination of what a reasonable officer *would* do.[5] When, as here, a reasonable officer would not have made the seizure of the suspect's person absent an invalid purpose, the arrest must be condemned as pretextual. As a panel of this court aptly stated in *United States v. Johnson,*[6]

> When a defendant alleges that an arrest was pretext to conduct an otherwise impermissible search, the appropriate inquiry is whether a reasonable officer would have made the arrest absent an illegitimate motive to search. If a reasonable officer would not have made the arrest absent illegitimate motive, then the resulting search ... or inventory is unlawful.

The same principle applies to an arrest made absent legitimate motive, objectively determined.

In analyzing fourth amendment claims, the Court has repeatedly inquired whether standard police procedures were followed, and in addition, when it has upheld their action, it has stressed the absence of evidence of bad faith.[7] In an inventory search case decided only last term, *Colorado v. Bertine,* the Court again noted that the police were following standard procedures and that there was no evidence of bad faith.[8] The emphasis on following standard procedures accords with the principles set forth in *Scott.* When standard practices, not themselves unlawful, are followed, the police are acting in a fashion that is reasonable, objectively viewed, even if they have an ulterior motive. Here the police were clearly *not* following standard procedures. And they were not acting in good faith—objective or subjective.

An arrest is arbitrary, hence unconstitutional, if it is made in accordance with a potentially discriminatory plan, even when

---

**2.** 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978).

**3.** 472 U.S. 463, 470–71, 105 S.Ct. 2778, 2783, 86 L.Ed.2d 370 (1985).

**4.** *Scott,* 436 U.S. at 137, 98 S.Ct. at 1723.

**5.** *United States v. Smith,* 799 F.2d 704, 709, 711 (11th Cir.1986).

**6.** 815 F.2d 309, 315 (5th Cir.1987) (citation omitted).

**7.** *South Dakota v. Opperman,* 428 U.S. 364, 376, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000 (1976); *Cady v. Dombrowski,* 413 U.S. 433, 447, 93 S.Ct. 2523, 2531, 37 L.Ed.2d 706 (1973).

**8.** *Colorado v. Bertine,* —— U.S. ——, 107 S.Ct. 738, 742, 93 L.Ed.2d 739 (1987).

the same action, undertaken in accordance with neutral principles, would be permissible.[9] Stopping every tenth car at a fixed checkpoint for license checks is permissible; stopping only cars containing people who looked Hispanic would not be. Similarly, it would be reasonable, not arbitrary, hence unobjectionable, if a police department decided to work through its backlog of old warrants by executing them according to some nondiscriminatory scheme, even if, after such a warrant was executed, they interrogated the arrested person about other matters, but it is impermissible for a police department to decide which warrants to execute by looking for people they want to question but do not have sufficient grounds to arrest.

Three decades ago in *Abel v. United States*,[10] a case involving the arrest of a Russian spy on an alleged subterfuge, the Court refused to suppress evidence obtained thereby because the lower courts had found that the government officials had not acted in bad faith. The Court said, however, that "[w]ere this claim justified by the record, it would indeed reveal a serious misconduct by law-enforcing officers."[11] As Professor LaFave points out, Abel represents a situation in which

> 'the underlying intent or motivation of the officers involved'—to utilize the *Scott* phrase once again—does not require suppression: where, even assuming that intent or motivation was the dominant one in the particular case, the Fourth Amendment activity undertaken is precisely the same as would have occurred had that intent or motivation been entirely absent from the case.[12]

In Causey's case, the police activity would not have been undertaken *but for* the "underlying intent or motivation"

which, standing alone, could not have supplied a lawful basis for the police conduct. In his case, the police engaged in misconduct even if we disregard their subjective "underlying intent or motivation." Their deviation from their usual practice without just cause made their conduct arbitrary, thus constituting yet another reason why Causey's arrest violated the fourth amendment. Using the rule of *Scott*, Causey's arrest did not satisfy the "standard of objective reasonableness."[13]

The Supreme Court opinion in *Villamonte–Marquez*,[14] on which the majority relies, does not support the validity of Causey's arrest. *Villamonte–Marquez* is chiefly concerned with the validity of a statute that authorized customs officers to board vessels anywhere within the United States or within the customs waters at any time for the purpose of document inspection. In a footnote,[15] the Court dismissed the argument that the customs officers should not be permitted to rely on the statute because doing so in this case was merely a ploy to allow them to follow up on an informant's tip that a vessel in the area was transporting marijuana. The Court said that it had rejected such reasoning in *Scott* and rejected it again on the facts before it. The Court thus explicitly reaffirmed its commitment to the principle announced in *Scott:* if an arrest is objectively reasonable, then subjective intent alone does not make it unconstitutional. If, however, the arrest is not objectively reasonable, then it is unconstitutional. In *Villamonte–Marquez* the Court held that the customs officers' action *was* reasonable,[16] whereas the policemen's actions in *Causey* were not.

By holding the arrest in *Causey* constitutional, the majority opinion establishes a

---

9.  *See Delaware v. Prouse*, 440 U.S. 648, 661–62, 99 S.Ct. 1391, 1400–01, 59 L.Ed.2d 660 (1979).

10.  362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960).

11.  *Id.* at 226, 80 S.Ct. at 690.

12.  1 W. LaFave, Search & Seizure: A Treatise on the Fourth Amendment, 1.4(e), at 92 (2d ed.1970).

13.  *Id.*, 1.4(e), at 94.

14.  462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983).

15.  *Id.* at 584 n. 3, 103 S.Ct. at 2577 n. 3.

16.  *Id.* at 593, 103 S.Ct. at 2582.

new rule that makes the whole more than the sum of its parts: the police can take two bases for arrest, each constitutionally insufficient—an unreasonable and arbitrary execution of a warrant and a suspicion amounting to less than probable cause —and add them together as a basis for a constitutionally acceptable arrest. This result flies in the face of the purposes of the fourth amendment and of established Supreme Court precedent.

## II.

If the arrest was illegal, then we must decide whether to exclude Causey's confession as the fruit of that illegality. Under the analysis directed by the Court's decision in *Brown v. Illinois,* we consider the temporal proximity of arrest and confession, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct to see whether the interests and policies served by the fourth amendment will be furthered by exclusion.[17]

The deterrence objectives of the exclusionary rule can be served only if we exclude Causey's confession. The police conduct here was calculated to abuse an individual who was suspected of a crime but whose sole known fault was his past record. The police set out, by means of the arrest, to harass the suspect into a confession, a plan in which they succeeded despite their *Miranda* warnings.

None of the attenuating factors discussed in *Brown* is present here to a significant degree. Causey was interrogated continuously in the coercive environment of the police station, and he confessed within four hours of the arrest. The *Miranda* warnings cannot, by themselves, purge the taint of the illegality.[18] Nor are there significant attenuating intervening circumstances.

## III.

In the kind of society in which we live, few persons have a life so blameless that

some reason to arrest them cannot be found, whether it be for entering an intersection when the light is on caution, or for violating a zoning regulation, or for having an expired brake tag. The fourth amendment protection against arrests without probable cause is designed to protect citizens against being arrested for such a matter when there is no objective justification for the arrest save the police's desire to question the person in custody about a matter for which they lack the authority to make an arrest.

Untold thousands of Americans are subject to arrest for failing to pay parking tickets, failure to respond to summonses for traffic violations, and similar minor offenses. Even though the charges themselves and the warrants based on them are not stored or "warehoused" for a use other than to support an arrest for the offense charged, the result reached in the majority opinion makes the earlier charges readily available for later use. Police who desire to arrest an individual without probable cause may merely leaf through the files or turn to the computer to determine whether they can find some reasons to arrest a suspect for whose arrest they otherwise lack probable cause, just as the police did when they set out to find some pretext to arrest Causey. While I do not condone the possible law violations that led to the imposition of the earlier charges, I do not think such prior derelictions strip the alleged lawbreakers of fourth amendment protection if they should later be suspected of other offenses.

News reports indicate how many millions will be exposed to pretextual arrest by virtue of the majority opinion either because a warrant to arrest them for some offense has already been issued or because they have been charged with an offense for which a warrant might be obtained. The Federal Bureau of Investigation has been testing a system that permits inquiries about criminal suspects from every state to

---

**17.** 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975).

**18.** *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Brown v. Illinois,* 422 U.S. at 603, 95 S.Ct. at 2261 (1975).

be compared with names registered in a computer. "The primary purpose of the project is to devise a national communications system through which a policeman in New York, a prosecutor in Chicago or a judge in Los Angeles will be able to determine swiftly whether the suspects they are holding have ever been arrested in any other state."[19] Five years ago policemen were routinely using the system more than 300,000 times a day to answer such questions as whether a car is stolen.[20]

Syracuse, New York, has 20,000 delinquent parking tickets.[21] In Toledo, Ohio, 31,890 parking tickets were reported delinquent, and, after intensified police efforts, only slightly more than half were paid.[22] In Indianapolis, Indiana, "[t]he computer told police they could find 5,800 defendants at 2,700 companies. It also showed there were 28,000 outstanding warrants for traffic offenses, 9,000 for misdemeanors and 1,500 for felonies."[23] Indianapolis police reported an estimated 27,000 such lawbreakers.[24]

Washington, D.C. has records of 500,000 residents of Maryland, Virginia, and the District of Columbia who have failed to pay parking tickets.[25] Los Angeles has considered an amnesty program in which 810,000 traffic offenses carried on the court's computer docket might be settled by payment "while having arrest warrants dismissed."[26]

These are but examples. Current technology has made it possible for every police system in the nation to record in a computer the name of every traffic offender and every other person wanted for any offense, however trivial, and for a national system to collate all of these records. The majority opinion permits any police officer who suspects anyone of any crime to turn to the computer, determine whether the suspect is listed as subject to an outstanding charge

of running a red light or some other misdemeanor, obtain a warrant if none has previously been issued, and arrest the suspect without probable cause to detain him for the offense being investigated, then interrogate him at the jail.

As judges, it is our duty under article III of the Constitution to uphold the guarantees of the Bill of Rights that assure the public protection from the unconstitutional acts of the other branches. The Constitution protects all individuals, even the unworthy, from governmental invasion of their protected rights. The due process clauses, the fourth amendment guarantee against unreasonable searches, and the sixth amendment safeguards are all designed to protect persons suspected of crime against unconstitutional actions by the government and its agents, whether those agents be police or prosecutors.

To uphold the Constitution is not "to punish the public for naughty intent on the part of the police," as the majority chooses to characterize it. The public is not punished but served when the constitutional rights of the nation's citizens are safeguarded. When other branches of the government fail in their duty, it is our responsibility in the cases that come before us to call the foul. The police conduct in arresting Causey was just such a foul, and I condemn it not because it was motivated by naughty intent but because it violated the fourth amendment.

19. N.Y. Times, Dec. 12, 1982, at 120, col. 4.

20. *Id.*

21. United Press International Report, Nov. 1, 1987.

22. UPI Report, July 19, 1986.

23. Associated Press Report, Feb. 1, 1984.

24. UPI Report, Feb. 1, 1984.

25. Wash. Post, Nov. 27, 1980, District Weekly.

26. L.A. Times, July 30, 1985, Metro section, Part 2 at 1, col. 1.