**UNITED STATES of America**

v.

**Carletha Jeter HASKINS.**

**UNITED STATES of America**

v.

**Atlas Wayne PHILLIPS.**

Crim. Nos. 1:90CR114(1), 1:90CR114(2).

United States District Court,
E.D. Texas,
Beaumont Division.

Aug. 1, 1991.

Gerald E. Bourque, Houston, Tex., for Haskins.

Bruce N. Smith, Beaumont, Tex., for Phillips.

Kerry M. Klintworth, Asst. U.S. Atty., Beaumont, Tex., for U.S.

## MEMORANDUM OPINION AND ORDER

COBB, District Judge.

Defendants Carletha Jeter Haskins (Haskins) and Atlas Wayne Phillips (Phillips) have each filed motions to suppress evidence seized from their vehicle by officers of the Beaumont Police Department during the course of a traffic stop on Interstate Highway 10 on October 16, 1990, said evidence consisting of a large quantity of marijuana, a .32 caliber handgun, and bullets. Phillips has filed a redundant "pro se motion to suppress." As is fully set forth below, the defendants' motions are each denied.

## I. THE STOP AND THE SEARCH

Beaumont Police Officers David Froman and Gerald Lachance were assigned to work a traffic enforcement detail on October 16, 1990. At around 2:20 P.M., while travelling east on I–10 in their patrol car, the officers noticed the defendants' vehicle rapidly approaching their car from behind. When the defendants' vehicle was about to overtake the police car, it braked sharply and followed far behind the police vehicle. Officer Froman, who was driving the patrol car, thought it strange the manner in which the defendants' vehicle reacted to the sight of their cruiser. Froman then slowed down in an effort to allow the defendants' vehicle to pass his cruiser. However, even after Froman slowed down to a speed below the posted minimum, the defendants' vehicle remained behind his police cruiser. Froman then drove his cruiser off the roadway and onto the median strip. Then, the defendants' vehicle passed the police cruiser. At this point Froman and Lachance saw that the two occupants of the defendants' vehicle, Haskins, the driver, and Phillips, the front seat passenger, were not wearing their seat belts, combination lap and shoulder-type belts which the officers saw hanging coiled and unused. Froman pulled the

police cruiser back onto the highway immediately behind the defendants' vehicle, activated emergency lights, and pulled the defendants' vehicle over. Both Froman and Lachance testified that they decided to stop the defendants for their violation of the Texas seat belt law. The officers also testified that it was not unusual for them to stop a vehicle for such a violation, that they and other Beaumont Police officers had, prior to stopping the defendants, routinely enforced the seat belt law.

While the defendants' vehicle and the police cruiser were parked alongside the highway, the officers exited their patrol car. Froman walked over to the driver side of the defendants' vehicle to speak with Haskins while Lachance spoke to Phillips on the passenger side. Froman told Haskins he had stopped her vehicle because neither she nor her passenger were wearing seatbelts. In response to Froman's requests, Haskins produced her driver's license and, since she was travelling in a rented car, the car rental agreement. Froman noticed that the name on the rental agreement matched the name on Haskins' driver's license. Froman also noticed that when Haskins removed her driver's license from her purse, a pack of "Zig Zag" brand cigarette rolling papers fell out of the purse. This made Froman curious since, as he testified, he thought only older adults rolled their own tobacco cigarettes while he knew such rolling papers were commonly used to roll marijuana cigarettes. Haskins was thirty-six years old at the time. Froman then asked Haskins to follow him back to the front end of his cruiser where he asked her further questions.[1]

Haskins told Froman that she and Phillips, her common law husband, were bound for Washington, D.C. via Alabama, where the two would stop to attend to some family business. At this point Froman went to talk with Phillips who was now sitting in the rear of the police cruiser.

When Lachance initially spoke to Phillips he asked him why he wasn't wearing his seat belt. Phillips said it was because he and Haskins had just resumed driving after a lunch stop and had not yet had the time to fasten his seat belt. Lachance then asked Phillips where he and Haskins were going. Phillips responded that they were going to Washington, D.C.[2] From the start of his conversation with Phillips, Lachance noticed that Phillips was "literally shaking," "stuttering," and was very "fidgety." Lachance testified that while he expects persons who are pulled over by the police to be nervous, Phillips' level of anxiety was "way out of the ordinary." Reacting to Phillips' condition, Lachance asked Phillips to step out of his vehicle, whereupon he patted-down Phillips for weapons and had him sit in the police cruiser.

Froman spoke with Phillips and he too found Phillips "extremely nervous" and noticed that his voice and hands were shaking. When asked by Froman about his agitated state, Phillips said he had no idea why he was so nervous.

Next, Froman and Lachance compared notes. Based upon the reluctance of the defendants to pass the police cruiser on the highway, Haskins' and Phillips' apparent inconsistent stories regarding their destination, the presence of rolling papers, Phillips' unusual nervousness, and the feeling that "something was wrong," Froman asked Phillips to sign a standardized Beaumont Police Department "Waiver of

---

1. Froman and Lachance made no secret of specialized training each has received in narcotics interdiction. They have each been instructed to ask questions of persons that they stop for traffic violations in an effort to uncover evidence of narcotics offenses. Lachance said his personal technique is to "have a conversation" with those whom he stops.

2. Froman testified that Phillips had omitted the intermediate stop in Alabama when telling him of his and Haskins' travel plans. Froman testified that, based on this omission, he found that Haskins and Phillips had presented inconsistent stories, a fact that he said contributed to his decision to prolong the detention of the defendants. However, Lachance's offense report indicates Phillips *had* told him (Lachance) of the planned stop in Alabama. In sum, while it is not entirely clear what the officers told one another at the scene regarding the Alabama stop, it is clear that Froman had a good faith belief that, at the time of the stop, the defendants' itineraries appeared to differ.

Search" form.[3] Haskins agreed to sign the form, taking time to read it before doing so.

Froman then searched the defendants' vehicle, quickly finding under the front seat three small bags that appeared to contain marijuana. Froman next advised Haskins and Phillips that they were each under arrest for possession of marijuana. Each defendant was then read his *Miranda* rights and each indicated, either verbally or by a nod of the head, that they each understood the warnings. When Froman asked Haskins if they had any more drugs, she told him that there was more marijuana in the trunk. Froman then opened the trunk of the car with keys provided him by Haskins and found inside three suitcases containing three large bales of marijuana, a .32 caliber pistol, and five rounds of ammunition. Froman, Lachance, and Haskins each testified at the suppression hearing that the stop had been underway for no more than five to seven minutes at this point.

Haskins' version of the traffic stop was substantially the same as the officers'. However, Haskins believes she and Phillips were followed to Beaumont from Houston, where their trip had begun earlier in the day, by a red Nissan 300–ZX automobile. The Nissan appeared on the scene of the traffic stop shortly after its inception. It was driven by an undercover Beaumont police narcotics officer. Haskins said she lost sight of the Nissan when they stopped for lunch just outside of Beaumont. Haskins also testified that the bags of marijuana were found prior to her execution of the consent search form and that she did not tell Froman or Lachance about the bundles of marijuana in the trunk. The court expresses no opinion as to the whether or not the Nissan had followed the defendants from Houston[4] and finds unbelievable Haskins' version of how the bags and the bundles of marijuana were found.

## II. THE LAW

Under Tex.Rev.Civ.Stat.Ann. art. 6701d, § 107C (Vernon Supp.1991), a person commits an offense if the person (1) is at least 15 years old; (2) is riding in the front seat of a passenger car while the car is being operated on a road, street, or highway of the state; (3) is occupying a seat that is equipped with a safety belt; and (4) is not secured by a safety belt. Thus, officers Froman and Lachance had probable cause to believe that both Haskins and Phillips were committing the offense of violating the Texas seat belt law when they stopped the rental car on Interstate 10.

■ After the officers stopped the defendants' vehicle for the seat belt violations, any continued detention of Haskins and Phillips would not offend the fourth amendment if the officers had at least a reasonable and articulable suspicion that the defendants had committed or were about to commit a crime. *See United States v. Kye Soo Lee,* 898 F.2d 1034, 1039 (5th Cir.1990) (citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Under *Terry,* the detaining officer must "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the seizure; the seizure must be justified by a reasonable suspicion at the inception of the intrusion; and the search must be reasonably related in scope to the circumstances justifying the intrusion in the first instance. *Kye Soo Lee,* 898 F.2d at 1034. When the officers observed the rolling papers, the inconsistent stories, and, most significantly, Phillips' extreme anxiety, and detained the defendants no longer than seven minutes before Haskins executed the consent search form, the requirements of *Terry* were met.

■ As another ground for suppression, Haskins challenges the validity of the consent search form on the basis that she signed it under coercion and did not under-

---

**3.** The "Waiver of Search" form was filed as exhibit "C" to Haskins' motion to suppress and as an exhibit at the suppression hearing. It is signed by Haskins and witnessed by Froman.

**4.** As will be discussed *infra,* this aspect of the traffic stop is irrelevant given the Fifth Circuit's view of pretext stops.

stand its content or effect. Courts use a "totality of the circumstances" test to determine whether consent to search has been given knowingly and voluntarily. *See United States v. Davis,* 749 F.2d 292 (5th Cir.1985). Here, neither of the officers threatened or manipulated Haskins to procure her signature on the consent form, nor did she complain to the officers that she did not understand the content, purpose, or effect of the form. She admitted to taking up to three minutes to read it. In short, Haskins' consent was given both knowingly and voluntarily.

■ Finally, Haskins and Phillips argue that the stopping of their car for seat belt violations was, in reality, an unconstitutional pretext to enable officers to detain them to further a narcotics investigation. Under *United States v. Causey,* 834 F.2d 1179 (5th Cir.1987) (*en banc*), this court must apply an objective standard when reviewing the conduct of the police officers. "[S]o long as police do no more than they are objectively authorized to do, their motives in doing so are irrelevant and hence not subject to inquiry." *Causey,* 834 F.2d at 1184. When officers Froman and Lachance stopped Haskins and Phillips for seat belt violations, they were doing no more than they were objectively authorized to do. Whether they were really looking for drugs or following the instructions of an undercover narcotics officer who had followed the defendants from Houston to Beaumont is irrelevant. Under *Causey,* the subjective intent of the officers is not pertinent. *See also United States v. Colin,* 928 F.2d 676, 678 (5th Cir.1991) (because officer "had probable cause, his motive—even if anything but proper—was irrelevant"); *United States v. Gallo,* 927 F.2d 815, 818–819 (5th Cir.1991) (officers were authorized to stop vehicle for traffic violation, even if officers' subjective intent was to further narcotics investigation); *United States v. Hernandez,* 901 F.2d 1217, 1219 (5th Cir.1990) (fact that police stopped truck for failure to display license plates as ruse to search for drugs did not affect legality of traffic stop). Consequently, this aspect of the defendants' motion is similarly without merit.

### III.   CONCLUSION

Accordingly, in light of the above analysis, the court finds that the defendants' motions to suppress should be and are, in all things, DENIED.