United States Court of Appeals,

Eleventh Circuit.

No. 95-8492.

UNITED STATES of America, Plaintiff-Appellee,

v.

Mary Lee BANSHEE, a/k/a Mary Lee Johnson, Defendant-Appellant.

June 18, 1996.

Appeal from the United States District Court for the Southern District of Georgia. (No. CR294-52-1), Anthony A. Alaimo, Judge.

Before HATCHETT, Circuit Judge, HENDERSON, Senior Circuit Judge, and MILLS[*], District Judge.

*OPINION*

RICHARD MILLS, District Judge:

Motion to suppress.

Denied below.

Appealed.

We affirm.

## I. FACTS

Following a jury trial in which she was convicted of Possession with Intent to Distribute Cocaine (21 U.S.C. § 841(a)(1)) and violating the Travel Act (18 U.S.C. § 1952(a)(3), Mary Lee Banshee was sentenced to 97 months imprisonment. The only issue on appeal is whether the district court properly denied a motion to suppress cocaine found during a search. Although for different reasons than those employed by the district court, we conclude the search was lawful.

---

[*]Honorable Richard Mills, U.S. District Judge for the Central District of Illinois, sitting by designation.

At approximately 5:00 a.m. on July 31, 1994, Mary Lee Banshee and Lee Ann Johnson were passengers in a rented car being driven by Kenneth Parker northbound on I-95 in Camden County, Georgia. Because the car was being operated with the high-beam lights on when there was traffic in the southbound lane, Deputy Sheriff William Todd stopped the vehicle. The traffic stop was both video and audio taped.[1]

When he stopped the car, Deputy Todd approached and told Parker to get out of the car. Once Parker got out, Deputy Todd asked him for his license. Parker failed to present a license but said he lived in South Carolina and had a license from the District of Columbia. Parker also told Deputy Todd that he and his passengers were enroute from a vacation in Miami, Florida and that his girl friend, Banshee, had rented the car.

While a second officer instituted a computer records check, Deputy Todd approached Banshee who was in the passenger seat. In response to Deputy Todd's questions, Banshee stated that a friend had rented the car and that they were returning from Orlando, Florida where they had gone to Disney World. Banshee indicated that Orlando was as far south as the trio had traveled.

The computer check revealed that Parker did not have a license from either South Carolina or from the District of Columbia—although the problem may have been with Parker's first name. Nevertheless, Deputy Todd only issued a warning ticket, instructed Parker that someone else would have to drive, and told

---

[1]We commend the use of video tape by police officers. It is a great benefit to the community, the courts, and the police.

Parker he was free to go.

Before Parker could leave, however, Deputy Todd asked Parker for consent to search the car. Parker gave his consent. Thereafter, Parker was quickly frisked and Deputy Todd approached the passengers. Johnson exited the vehicle first. When she did, Deputy Todd asked her if she had any weapons. Johnson replied that she did not. Deputy Todd then directed her, without conducting a frisk, to wait behind the car with Parker.

Deputy Todd then told Banshee to get out of the car. When Banshee got out, Deputy Todd noticed a bulge in her midsection and asked her if she had any weapons or "anything" on her person. Banshee replied that she did not. Deputy Todd then asked her to "turn around and let me see." When she did, Deputy Todd asked: "you ain't got nothing stuck here?" In response, Banshee stated that she was pregnant.

Deputy Todd then remarked to the other officer: "if they got anything she got it on her—she's saying she's pregnant. She, She got it on her ... I can see it, she got it on her. Go ahead start searching [the car]." Thereafter, without frisking Banshee, Deputy Todd directed her to the rear of the rented vehicle and Deputy Todd got in his car.

Once in his car, Deputy Todd got on the radio and asked for a female officer to conduct a search. In so doing, he stated: "man, I think I got another one here, uh, concealed though to where I'm not going to be able to get to it without a female." No female officers, however, were available. Deputy Todd then exited his vehicle and performed a pat-down of Banshee's mid-section. After

doing so, he directed Parker and Johnson to get on the ground and he handcuffed Banshee.

Once she was handcuffed, Deputy Todd asked Banshee what she was concealing. Banshee replied that it was something her boy friend had given her. Deputy Todd then removed one of Banshee's hands from the handcuffs and told her to put the package that she was concealing on the hood of the police car. Deputy Todd then again handcuffed Banshee and proceeded to open the package which was wrapped in tape. The package field-tested positive for cocaine and was eventually found to contain 728.7 grams of cocaine.

## II. DISTRICT COURT FINDINGS

After Banshee timely moved to suppress the cocaine, a hearing was held before United States Magistrate Judge James E. Graham. Following the hearing, Magistrate Judge Graham issued a very detailed 22-page recommendation to the district court. The basis of the recommendation was that: (1) the stop was not pretextual; (2) the scope of the stop was permissible; (3) consent to search the car was given; (4) the pat-down search of Banshee was proper under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); (5) Deputy Todd was entitled to seize the cocaine package because he believed the package was contraband; (6) the detention was proper under *Terry;* and (7) the search of the package was lawful because when Deputy Todd opened the package there was probable cause to arrest Banshee. The district court accepted the recommendation and denied the motion to suppress.

On appeal, Banshee contends that the stop was pretextual and that Deputy Todd lacked reasonable suspicion much less probable

cause to detain, frisk, and search her. Alternatively, she argues that even if Deputy Todd had a reasonable suspicion, the stop elevated into an unlawful arrest, and the search exceeded anything permitted under *Terry.* Finally, she maintains that the warrantless search of the package was impermissible.

### III. ANALYSIS

We find that the lower court's findings on the issues of the alleged pretextual stop and the search of the cocaine package, after it was on the hood of the car, are fully supported by the record and the law. Accordingly, those two issues do not need additional discussion. The *Terry* related issues, however, warrant discussion.

According to the Supreme Court, an officer can conduct a protective pat-down for *weapons* if "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry v. Ohio,* 392 U.S. at 27, 88 S.Ct. at 1883. Analysis of whether a *Terry* frisk was permissible is objective. Magistrate Judge Graham found that "Deputy Todd acted reasonably in performing pat-down searches of the defendants."

After carefully reviewing the video tape of the arrest, we find that the lower court's finding was clearly erroneous. The sequence of events simply does not support a finding that when the pat-down search of Banshee occurred, Deputy Todd was conducting a search for weapons to protect himself. *See United States v. Tharpe,* 536 F.2d 1098, 1101 (5th Cir.1976) (noting that the objective *Terry* standard may not be invoked to condone sham or

pretextual searches), *rev'd, United States v. Causey,* 834 F.2d 1179 (1987) (en banc).[2]

Under the facts of this case, if Deputy Todd was conducting a *Terry* search, the search would have occurred immediately after Banshee got out of the car.[3] Looked at another way, the only piece of information Deputy Todd had when he conducted the pat-down search that he did not know about when Banshee initially got out of the car was that a female officer was not available. The availability of a female officer, however, is not related to the question of whether Banshee was armed and dangerous. Moreover, because the sole purpose of a *Terry* frisk is officer protection, there is absolutely no prohibition on police officers conducting *Terry* pat-down searches on suspects of a different gender.

Accordingly, we conclude that the only reasonable interpretation of what occurred is that when Deputy Todd conducted the pat-down frisk he was not doing it because he had a reasonable suspicion that Banshee was armed and dangerous, but because he had reason to believe Banshee was concealing contraband—most likely drugs—and there was no female officer available to conduct the search. *See Causey,* 834 F.2d at 1181 (explaining that "what

---

[2]We have adopted former Fifth Circuit case law as precedent. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981 (en banc). The subsequent reversal of *Tharpe* by the Fifth Circuit in *Causey,* however, is not binding. Moreover, it is questionable whether *Causey* actually overruled *Tharpe. See Causey,* 834 F.2d at 1182 n. 6 (noting that "the holding in *Tharpe* actually supports a broad use of an objective standard").

[3]We do not suggest that in all situations a *Terry* search must be conducted immediately. Often, a police officer will not immediately have sufficient reason to believe that a suspect may be armed and dangerous.

signifies is the officer's actions, objectively viewed in light of the circumstances confronting him."). Thus, we conclude that the lower court's finding was in error.

Our conclusion that the pat-down search was not conducted pursuant to *Terry,* however, does not end the inquiry. "When the police possess probable cause to conduct a search, but because of exigent circumstances, do not have time to obtain a warrant, they may search without a warrant." *United States v. Juarez,* 573 F.2d 267, 274 (5th Cir.), *cert. denied,* 439 U.S. 915, 99 S.Ct. 289, 58 L.Ed.2d 262 (1978). The rule applies equally to searches of person and property. *See Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (applying rule to a person).

In this case, based upon the inconsistent statements and the bulge in Banshee's mid-section, we find that Deputy Todd had probable cause to believe a search would uncover evidence of a crime. *See United States v. Thornton,* 733 F.2d 121, 127-28 (D.C.Cir.1984) (discussing what constitutes probable cause in this context). We also find that there were exigent circumstances excusing the need for a warrant. *See Juarez,* 573 F.2d at 275 (finding exigent circumstances when a detained suspect might have left with the contraband if police would have waited to secure a warrant).

Specifically, Deputy Todd had the option of either letting Banshee go or detaining her for a prolonged period of time while he secured a warrant. Accordingly, under the circumstances, the frisk was much less an intrusion than a prolonged detention. *See* WAYNE R. LaFAVE, SEARCH AND SEIZURE § 6.5(c) (1994) ("[w]here, for

example, only a very limited search into a specific location is needed, it may be that an immediate but warrantless search of that place is so clearly a lesser intrusion that it may be undertaken in lieu of impoundment of the premises until a warrant can be obtained.").

Accordingly, we hold that Deputy Todd had probable cause to conduct a search and that exigent circumstances excused the need to get a warrant.

We also conclude that the search could be considered a lawful search incident to an arrest. Specifically, we find that the bulge in Banshee's mid-section, coupled with the inconsistent statements, were sufficient grounds for Deputy Todd to conclude that Banshee was committing a crime. *See United States v. Tomaszewski,* 833 F.2d 1532, 1535 (11th Cir.1987) (finding probable cause to arrest based upon bulge in defendant's clothing); *United States v. Elsoffer,* 671 F.2d 1294, 1299 (11th Cir.1982) (same). Moreover, because there was probable cause for the arrest before the search and the arrest immediately followed the challenged search, the fact that Banshee was not under arrest at the time of the search does not render the search incident to arrest doctrine inapplicable. *Rawlings v. Kentucky,* 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980); *Thornton,* 733 F.2d at 128 n 9.

## IV. CONCLUSION

Although we conclude that the district court erred when it accepted the Magistrate's recommendation that the search was proper under *Terry,* we find that the search was indeed lawful for the reasons stated, and therefore affirm the denial of the motion to

suppress.

AFFIRMED.