UNITED STATES of America

v.

John J. HENAO.

UNITED STATES of America

v.

Michael RAMIREZ.

No. 92–CR–153.

United States District Court,
E.D. Texas,
Beaumont Division.

Sept. 2, 1993.

Kerry Klintworth, Asst. U.S. Atty., for U.S.

Joe L. Hernandez, Houston, TX, for Henao.

Bruce N. Smith, Beaumont, TX, for defendants.

## MEMORANDUM OPINION AND ORDER

COBB, District Judge.

A routine traffic stop of a rental truck on Interstate Highway 10 ultimately revealed 160.73 kilograms of cocaine in the back of the truck. The defendants have moved to suppress the cocaine. Having conducted a hearing on the matter, the court finds that the search of the automobile and seizure of the cocaine were lawful.

## I. THE STOP AND THE SEARCH

On November 12, 1992, at approximately 10 a.m., Beaumont Police Officers Froman and LaChance observed a U–Haul truck travelling at 60 MPH in a 55 MPH zone. Additionally, the officers noticed that the truck was tailgating other vehicles. The officers activated their emergency lights and stopped the truck on the shoulder of Interstate 10.

The driver handed Officer LaChance a Connecticut Driver's License which identified him as John Henao. The passenger, later identified as Michael Ramirez, handed the truck's rental agreement to Officer Froman. The rental papers listed John Henao, the driver, as the person who rented the truck. While running a computer check on Henao's license, the officers questioned Henao and Ramirez individually. During the questioning, Officer LaChance noticed that Henao was nervously swaying back and forth and also that Henao avoided making eye contact with him. Comparing notes, the officers determined that Henao and Ramirez had given conflicting answers concerning their recent whereabouts. The Officers accepted Henao's invitation to look into the back of the truck. As Mr. Henao opened the truck's back door, Officer LaChance detected a strong smell of a solvent [1]. Based upon Henao's and Ramirez's inconsistent stories regarding their recent whereabouts, Henao's unusual nervousness, and the smell of a solvent wafting from the back of the truck, Officer LaChance asked Mr. Henao to sign a standardized Beaumont "Consent to Search" form. Mr. Henao agreed to sign the form, taking time to read it before doing so. As the Officers began to examine the contents in the back of the truck, the force of a large truck passing by on the Interstate shook the vehicle. Concerned about the safety of unloading the truck on the shoulder, the Officers asked Mr. Henao if they could examine the truck and its contents in a nearby Beaumont police maintenance facility. Mr. Henao agreed, and the truck was driven to the police maintenance barn, which was located approximately two miles from the location of the traffic stop. Upon search of the vehicle at the barn, the Officers discovered a large cache of what appeared to be cocaine. Subsequent laboratory analysis revealed the substance to be cocaine powder weighing 160.73 kilograms.

---

1. Solvents can be used to process cocaine.

# 928

## II. THE LAW

■ Under *Terry v. Ohio,* 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968), the judicial inquiry into the reasonableness of a search or seizure "is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." This test applies to cases in which motorists are stopped for violating traffic laws. *United States v. Kelley,* 981 F.2d 1464, 1467 (5th Cir.1993), *cert. denied,* —— U.S. ——, 113 S.Ct. 2427, 124 L.Ed.2d 647 (1993).

■ The initial stop of the vehicle by Officers Froman and LaChance was clearly justified. Under Tex.Rev.Civ.Stat.Ann. art. 6701d, § 61(a) (Vernon 1977), a person commits an offense if the person does not, "when following another vehicle, maintain an assured clear distance between the two vehicles." Furthermore, it is an offense to exceed the maximum posted speed on any road. *See* Tex.Rev.Civ.Stat.Ann. art. 6701d, § 166 *et seq.* Therefore, Officers Froman and LaChance had probable cause to believe that Henao was committing the above offenses when they stopped the rental truck on Interstate 10, and their stop satisfied the first prong of the *Terry* test.

■ Similarly, the questioning and detention of the defendants did not exceed the reasonable scope of the stop's original purpose and thus satisfied *Terry's* second prong. Police questioning, even on a subject unrelated to the purpose of the stop is neither a seizure nor a Fourth Amendment violation. *United States v. Shabazz,* 993 F.2d 431, 436 (5th Cir.1993). The focus of the inquiry becomes, therefore, whether the physical detention of the suspects exceeded its original scope. *Id.* The questioning occurred while the officers were waiting for the results of the computer check on Henao's license. Similarly, the truck was moved to the main-

tenance barn after consent was given[2], yet before the check on the license had returned. *See United States v. Kapperman,* 764 F.2d 786 (11th Cir.1985) (Holding that the bounds of a *Terry* stop were not exceeded when police moved stopped vehicle to nearby location to perform consent search because search on busy street where car was stopped would impede traffic.) Because neither the questioning nor the relocation of the truck exceeded the original scope of the detention, the second prong of *Terry* is satisfied and the detention was permissible. *See Shabazz,* 993 F.2d at 437.

■ Defendants also claim that the traffic stop of the truck was, in effect, an unconstitutional pretext to enable the officers to detain them in an attempt to find narcotics. Under *United States v. Causey,* 834 F.2d 1179 (5th Cir.1987) (en banc), this court must apply an objective standard when reviewing the conduct of police officers: "[S]o long as police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry." *Causey,* 834 F.2d at 1184. When Officers Froman and LaChance stopped the defendants, they were doing no more than they were objectively authorized to do under Texas traffic laws. Whether they were really looking for drugs is irrelevant. *See also, United States v. Gallo,* 927 F.2d 815, 818–819 (5th Cir.1991) (officers were authorized to stop vehicle for traffic violation, even if officers' subjective intent was to further narcotics investigation), *United States v. Haskins,* 773 F.Supp. 965, 968 (E.D.Tex.1991), *aff'd* 983 F.2d 1061 (5th Cir. 1993) (Officers' subjective intent irrelevant). Defendants' objections as to the possible subjective intent of Officers Froman and LaChance are therefore without merit.

■ Defendants next maintain that Henao's consent to the search should be

---

2. Henao's claim that Texas law does not authorize police to obtain consent to search vehicles following a routine traffic stop is unfounded. The Texas courts regularly allow the fruits of consent searches of vehicles to be admitted. *See e.g. Cardenas v. State of Texas,* 857 S.W.2d 707 (Tex.App.—Houston [14th Dist.] 1993) (Consent search of vehicle yielding cocaine permissible after routine traffic stop for weaving.), *Cordero v. State of Texas,* 852 S.W.2d 736 (Tex.App.—Fort Worth 1993) (Consent search of vehicle yielding marijuana after routine traffic stop held permissible.), *Juarez v. State of Texas,* 758 S.W.2d 772 (Tex.Crim.App.1988) (en banc) (affirming conviction based on marijuana seized from automobile after defendant consented to search by police.)

found invalid. Two separate inquiries must be made in analyzing an individual's consent to a search: whether the defendant's consent was voluntary, and whether the search was within the scope of the consent. *United States v. Coburn,* 876 F.2d 372 (5th Cir.1989). In *United States v. Olivier–Becerril,* 861 F.2d 424 (5th Cir.1988), the Fifth Circuit reviewed six factors in determining whether consent to search was voluntary: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. *Olivier–Becerril,* 861 F.2d at 426. Although all of the factors are relevant, none is dispositive or controlling of the voluntariness issue. *Id.* Although Henao was not free to leave while the computer check on the license was pending, Officers LaChance and Froman did not employ any coercive or deceptive tactics to procure Henao's consent. Henao also fully cooperated with the officers and there is no evidence of any antagonism during the stop. Henao offered to let the officers look into the back of the truck after Officer LaChance inquired as to the purpose of the defendants' journey. Shortly thereafter, Henao took time to read the standardized Beaumont "Consent to Search" form and signed it. The form contained a clause which informed Henao that he had the right to refuse consent to the search. The defendant's education also supports the finding that the consent was voluntary; Henao is a high school graduate and studied civil engineering at Norwalk State Technical College for several semesters. Finally, it is unclear whether Henao believed that incriminating evidence would be found during the search. Perhaps he believed that the cocaine would not be

found because the truck was so tightly packed. In any event, the factors considered as a whole clearly demonstrate that Henao's consent to the search was voluntary.

As a second element, the search must be within the scope of the consent given. *Coburn,* 876 F.2d 372, 374. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno,* —— U.S. ——, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991).[3] Under this test, it is clear that the search did not exceed the scope of Henao's consent. The Beaumont Police "Consent to Search" form signed by Henao gave permission to Officers Froman and LaChance to search the "vehicle ... [described as a U–Haul truck] ... including the containers and contents located therein."[4] Henao claims that the traffic conditions on Interstate 10 made a thorough search of the vehicle appear unlikely. However, when the officers realized the perils of searching the vehicle on the roadside, they asked Mr. Henao if they could move the truck to the nearby police barn. Henao orally consented to the move. A reasonable person would understand the oral and written consent to allow a thorough search of the truck at the police barn. The search, therefore, did not exceed the scope of the consent, and defendants' contentions therefore must be rejected.

 Ramirez complains that he did not consent to the search[5], and as such, the fruits of the search may not be used against him. It is well settled that consent to a search may be given not only by the owner of the property to be searched but also by "a third party who possess[es] common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974), *see*

---

**3.** *See also United States v. Rich,* 992 F.2d 502 (5th Cir.1993), *petition for cert. filed* (U.S. July 21, 1993) (No. 93–5302) (Under the circumstances, a reasonable person would have interpreted an affirmative response to officer's request "to have a look in" suspect's vehicle as the equivalent of general consent to search the automobile and its contents, including the suspect's luggage).

**4.** "The consent form ... was of the broadest nature." Henao's Memorandum In Support Of Defendant's Motion To Suppress, at 13.

**5.** At the suppression hearing, the United States Attorney withdrew the claim that Ramirez did not have standing to challenge the search.

930

also *Illinois v. Rodriguez* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (warrantless entry is valid when based upon the consent of a third party whom the police, at the time of the entry, reasonably believe to possess common authority over the premises, but who in fact does not do so). Similarly, in the automobile context, a person who has joint control over an automobile may give valid consent to its search. *United States v. Baldwin*, 644 F.2d 381 (5th Cir. Unit A 1981).[6] In the case at hand, Henao had joint, if not superior, control of the vehicle; he was both the driver and the lessee of the truck. As such, Henao's consent validated the subsequent search of the vehicle, and the cocaine may be offered against Ramirez. Ramirez's objection is therefore without merit.

### III. CONCLUSION

Accordingly, in light of the above analysis, the court finds that the defendants' motions to suppress should be, and are, in all things, **DENIED**.

---

6. In *Baldwin*, the wife's consent to search the car was sufficient despite the fact that her husband refused to consent to the search. *See also United States v. Horton* 488 F.2d 374 (5th Cir.1973), *cert. denied*, 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974) (fruits of vehicle search consented to by suspect falsely claiming to be car's owner used against true owner of the car), *United States v. Varona–Algos*, 819 F.2d 81 (5th Cir.1987), *cert. denied*, 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 255 (1987) (driver's consent to search vehicle valid against passenger for search of passenger's bag in trunk of car despite the fact that passenger later claimed to be car's owner), *United States v. Morales*, 861 F.2d 396 (3rd Cir.1988) (driver had authority to consent to search of entire vehicle, and fruits of search valid against passenger/ lessee of the vehicle), *United States v. Eldridge*, 984 F.2d 943 (8th Cir.1993) (driver of a car has authority to consent to a search of that vehicle).