UNITED STATES, Plaintiff,

v.

Terry SANDERS, Defendant.

No. 1:93–CR–190–1.

United States District Court,
E.D. Texas,
Beaumont Division.

Feb. 23, 1994.

Keith F. Giblin, Asst. U.S. Atty., Beaumont, TX, for plaintiff.

John R. Heath, Nacogdoches, TX, for defendant.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO SUPPRESS

COBB, District Judge.

Defendant Terry Sanders has filed a Motion to Suppress certain evidence which he asserts was obtained in violation of the Fourth Amendment. For the following reasons, the motion is DENIED.

## I. BACKGROUND [1]

Late in the evening [2] of September 27, 1993, police stopped a blue Chevrolet van driven by Terry Sanders on U.S. Highway 59, immediately north of Garrison, Texas. A subsequent search of Sanders' vehicle revealed approximately 200 pounds of marijuana. The marijuana was contained in garbage bags covered with blankets in the rear of the van driven by Sanders. The officers arrested Sanders and took him to the Nacogdoches County jail. The United States subsequently indicted Sanders for possession of marijuana with intent to distribute. Sanders argues that the search exceeded the scope of consent and the officers lacked probable cause to conduct an automobile search for marijuana. Consequently, he urges the evidence (200 pounds of marijuana) was obtained in violation of the Fourth Amendment and should be suppressed. This Court disagrees.

## II. DISCUSSION

■ It is now well-settled that a dual inquiry guides the judicial inquiry into the reasonableness of a search or seizure. Under *Terry v. Ohio*, the Court asks whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances justifying the initial interference. 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968); *United States v. Kelley*, 981 F.2d 1464, 1467 (5th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 2427, 124 L.Ed.2d 647 (1993) (applying *Terry* to automobile stops for violations of traffic laws).

■ In this case, the initial stop was justified. At approximately 11:40, Officer Keith A. Kiplinger, deputy marshal for the City of Garrison, observed a blue Chevrolet van proceeding northbound on Highway 59 through downtown Garrison. While under his watch, the van twice veered from its course in the far right-hand northbound lane to enter the left-hand northbound lane. Officer Kiplinger then stopped the van. Under Texas law, failing to maintain a single lane is a traffic offense. Tex.Rev.Civ.Stat.Ann. art. 6701d § 60 (Vernon 1977). Plainly, the initial stop was justified, and *Terry's* first prong is met.

■ *Terry's* second prong asks whether the subsequent questioning and detention were within the scope of the purpose of the original stop. In the Fifth Circuit, police may question a suspect on matters unrelated to the initial stop without violating the Fourth Amendment. *United States v. Shabazz*, 993 F.2d 431, 436 (5th Cir.1993). Because the second prong is concerned with unlawful seizures, the inquiry turns on whether the length of the physical detention of the suspect exceeded the scope of the original stop—and not necessarily the subject matter of the inquiries. *Id.* at 436.

■ Sanders' detention did not exceed the scope of the original stop. When Sanders lowered the window to greet the officers, Officer Kiplinger detected a strong odor of air freshener.[3] Officer Kiplinger then requested Sanders' licence and proof of insurance, which were produced. Upon inquiry as to where he had been and where he was going, Sanders responded that he had been painting office buildings in the Houston area. However, when asked the location of the buildings, Sanders had no response.[4] Immediately thereafter, an exchange occurred whereby Sanders consented to some species

---

1. The factual background reflects the testimony of Officer Keith A. Kiplinger. Kiplinger testified at the hearing on the motion to suppress. Based on the Court's observation of the witnesses, their demeanor, credibility or lack thereof, and candor or lack thereof, the Court accepts Kiplinger's testimony as true to the extent it conflicts with the other witnesses' recollections of the events.

2. The stop occurred at approximately 11:45 p.m.

3. Kiplinger testified that based on his experience as a police officer, drug couriers routinely mask the smell contraband with air fresheners.

4. Arguably, at some point in the encounter, the officers developed probable cause to obtain a warrant to search the van based on Sanders suspicious activity and inability to frame appropriate responses to questions. Officer Kiplinger also testified that Sanders appeared nervous and began jumbling his speech. However, because the Court finds Sanders validly consented to a search of the van, and because the Court further concludes the search did not exceed the scope of that consent, the Court declines to consider whether the officers formed probable cause during the stop.

of search.[5] The entire conversation lasted roughly two minutes.[6] Under *Terry* and *Shabazz*, the Court concludes Sanders' detention did not outlast the permissible duration of the stop.

■ As discussed, there is no serious dispute that Sanders consented to a search. The principal issue is whether the officers exceeded the scope of Sanders' consent.[7] Of course, the scope of consent is measured by a standard of objective reasonableness. *Florida v. Jimeno*, 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). Under *Jimeno*, the test is what the reasonable person would have understood by the exchange between the suspect and the officer. *Id; see also United States v. Henao*, 835 F.Supp. 926, 929 (E.D.Tex.1993). Officer Kiplinger testified that Sanders told him the only things in the back of the van were painting tools and asked Kiplinger "would he like to see?" Officer Kiplinger acquiesced and then escorted Sanders to the rear of the van where Sanders unlocked the back doors and revealed the inside.[8]

■ The Court concludes that a reasonable person would have concluded the scope of consent extended to that portion of the van where the blankets and garbage bags were located. By stating that the only things in the back of the van were painting tools, Sanders implied that he was not transporting drugs. Similarly, by asking Officer Kiplinger if he would "like to see," Sanders expressly invited the examination of the rear of the van. Under these circumstances, a reasonable person would have concluded the scope of the search extended to the general area in the rear of the van. The blankets were within Officer Kiplinger's immediate view, and the bags were underneath. The fact that the marijuana was found in a closed bag is immaterial. The Supreme Court has held that consent to search in a general vicinity necessarily contemplates consent to search closed containers located within that area. *Florida v. Jimeno*, 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). As a result, the Court concludes the search was within the scope of consent given by Sanders. Because the evidence was obtained as a result of this lawful search, Sanders' motion to suppress is DENIED.[9]

---

5. Sanders does not, because he cannot, seriously dispute that he consented to a search. Under Kiplinger's testimony, Sanders volunteered the only things in the rear of the van were his tools and "would [Kiplinger] like to see?" Sanders testified that Kiplinger initiated .the exchanged and asked what was in the rear of the van. Sanders then informed Kiplinger that he could see his tools. Under either witnesses testimony, Sanders consented to a search.

6. A videotape of the stop corroborates the Court's finding that the length of the detention did not exceed the scope of the stop.

7. Sanders has not raised the issue of whether he voluntarily gave his consent to search the van. The Court, therefore, does not address that issue.

8. Even Sanders admits that he told Officer Kiplinger he could see the tools. Moreover, once the officer began examining the contents in the rear of the van, Sanders admitted never verbally objecting to the scope of the search.

9. Sanders also moved to suppress certain statements made after he was taken into custody. Because the government has agreed not to use these statements against Sanders, this portion of Sanders' Motion to Suppress is DISMISSED as MOOT.