UNITED STATES of America, Plaintiff,

v.

Reginald GANT, Defendant.

No. 1:93–CR–0186.

United States District Court,
E.D. Texas,
Beaumont Division.

June 10, 1994.

Keith Giblin, Asst. U.S. Atty., Beaumont, for plaintiff.

Bruce Smith, Beaumont, for defendant.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO SUPPRESS

COBB, District Judge.

Defendant Reginald Gant has filed a motion to suppress certain evidence which he asserts was obtained in violation of the Fourth Amendment. After an evidentiary hearing, the court denied the motion and proceeded with the trial of this case. Although at that time, the court announced oral reasons for denying the motion, the court deems it appropriate to assign written reasons which shall be entered of record *nunc pro tunc* as of the date and time the oral reasons were given. For the following reasons, the motion to suppress is DENIED.

## I. BACKGROUND[1]

At approximately 2:00 a.m. on October 7, 1993, officers Richard Anderson and Robert Ener of the Beaumont Police Department stopped a vehicle driven by Reginald Gant for making an unsafe lane change. Gant and the officers were both proceeding eastbound on Interstate 10, west of Beaumont, Texas. Although signaling prior to making a lane change, Gant did not travel the required distance from the time he activated the signal until he changed lanes.[2] Since this occurred immediately in front of a convoy, three eighteen-wheel tractor-trailer rigs, the officers became wary. They followed Gant for about a mile, pulled in behind him, activated their overhead lights, and initiated a traffic stop.

Gant's conduct during the stop further aroused the officers' suspicions. Initially, Gant got out of the vehicle to speak to the officers, but left his door open toward the traffic lane. When Officer Anderson requested Gant's driver's license, Gant appeared very nervous, and his hands were shaking. According to Anderson, although ordinarily people are nervous when stopped by police, Gant's reaction was somewhat exaggerated. Moreover, Gant would not make eye contact with Officer Anderson.

Officer Anderson's partner, Officer Ener, spoke separately to Tara Mitchell, a passenger in the vehicle. After consulting with Ener, Anderson noticed discrepancies in Mitchell's and Gant's responses to the officer's questions.[3] The discrepancies, coupled with Gant's conduct, prompted Anderson to ask Gant for consent to search the vehicle. Gant agreed. The search revealed close to one kilogram of cocaine.

## II. DISCUSSION

■ Whether a search or seizure is reasonable under the Fourth Amendment de-pends on (1) whether the officer's action was justified at its inception, and (2) whether the subsequent detention was within the scope and purpose of the original stop. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Kelley,* 981 F.2d 1464, 1467 (5th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 2427, 124 L.Ed.2d 647 (1993) (applying *Terry* to traffic stops). Gant raises three challenges to the search and detention. First, he questions whether he made an unsafe lane change. Second, he argues that at the time the officers requested consent to search, the detention had exceeded the scope and purpose of the original stop. Third, he argues his consent was not voluntary. The court rejects each of these arguments.

■ With respect to Gant's first point, the court finds as a factual matter that Gant did not travel the required distance between signaling and changing lanes. Under Texas law, a driver of a motor vehicle commits a traffic offense if he "turn[s] a vehicle from a direct course or move[s] right or left upon a roadway" without giving an appropriate signal. Tex.Civ.Stat.Ann. art. 6701d § 68(a) (Vernon 1977). Additionally, the "signal of intention to turn right or left ... shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning." Tex.Civ.Stat.Ann. art. 6701d § 68(b). Officer Anderson's testimony compels the conclusion that the signal was not given in the manner required by law. Additionally, given the circumstances surrounding the lane change, and the location of the traffic in the lane into which Gant was turning, the court concludes that Gant violated the traffic laws by making an unsafe lane change. Therefore, the officers were justified when they initiated the traffic stop, and *Terry's* first prong is met.

■ Second, Gant challenges the timing of Officer Anderson's request for consent to

---

**1.** Based on the court's observations of the witnesses, the background facts are taken from the testimony of Officer Richard Anderson. Although the court notes that much of the testimony is uncontroverted, in places where disputes exist, the court finds more credible the testimony of Officer Anderson.

**2.** According to Officer Anderson, Gant allowed his signal to blink only one time prior to changing lanes.

**3.** For example, Gant originally told Anderson that Gant and Mitchell were going *to* Louisiana. Later Gant stated that he and Mitchell were travelling *through* Louisiana.

search. Conceding that the officers could detain him while running a routine license check, Gant argues that because the officers requested consent *before* running the license check, the permissible scope and duration of the stop was exceeded. This action, Gant argues, vitiates his consent.

The court rejects this argument for several reasons. First, the evidence is in conflict as to whether Anderson had initiated the license check prior to requesting consent to search. Anderson testified that he could not remember whether he had done so on this particular occasion, but that it was his regular practice to do so. In fact, according to Anderson, his usual practice was to immediately run a computer check on the licensee from a microphone mounted near the dashboard on the passenger side of the automobile. Therefore, it is more likely than not, and the court therefore finds, that Anderson began the license check prior to requesting consent to search.

Even assuming Anderson asked for consent prior to running a license check, the circumstances surrounding this case demonstrate why this fact is a distinction without a difference. Police questioning, even on a subject unrelated to the stop itself is permitted. *United States v. Shabazz*, 993 F.2d 431, 436 (5th Cir.1993). Under *Shabazz*, the a license check is but one of many actions police may conduct during routine traffic stops. In addition to the license check, police may issue a citation, request a license and vehicle registration, and examine proof of insurance. *Shabazz*, 993 F.2d at 437; *see also United States v. Kelley*, 981 F.2d 1464, 1469 (5th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 2427, 124 L.Ed.2d 647 (1993).

This entire stop lasted approximately eight minutes, well within the time necessary to complete these tasks. The court refuses to micromanage the *order* of the actions taken by peace officers, provided that the length of the traffic stop is otherwise reasonable. The court therefore holds that the duration of the detention did not violate *Terry's* second prong. Gant's second challenge is rejected.

■ Third, Gant challenges the voluntariness of his consent. In the Fifth Circuit, several factors bear on whether one voluntarily gives consent: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the education and intelligence of the defendant; and (6) the belief held by the defendant that no incriminating evidence will be discovered. *United States v. Olivier–Becerril*, 861 F.2d 424, 426 (5th Cir.1988). None of these factors is dispositive or controlling, although all are relevant to the court's inquiry. *Id.*

On balance, the factors direct the conclusion that Gant voluntarily consented to the search. First, Gant was not voluntarily "pulled over" for the traffic offense. However, it is equally clear that the officers employed no coercive procedures. A videotape of the entire stop revealed that the officers were indeed courteous to Gant. They treated him with respect. Further, the engagement was relatively amicable, and Gant appeared to cooperate with the officers. Although it appears that Gant was unaware of his right to refuse consent, Gant testified that even if he had been aware of this right, he still would have consented. Additionally, although Gant completed high school only through the eleventh grade, he appears quite intelligent and has no learning disabilities. Finally, whether he subjectively believed the officers would find anything incriminating is unclear. The court has considered all of the above factors and finds that, on balance, Gant voluntarily gave consent to search the vehicle. Therefore, the court rejects Gant's third argument as well.

■ One final point, however, should be addressed. Even assuming the consent to search was involuntary, the location of the contraband further weakens Gant's arguments. The cocaine was discovered not by examining the interior of the vehicle or any of its compartments. Rather, a package wrapped in duct tape was observed when Officer Anderson shined his flashlight at the rear right wheel well. Anderson had become suspicious when he noticed, after viewing the underside of the vehicle, that a shiny new

bolt held the gas tank in place. The metallic gas tank surrounding the bolt was scratched and scraped. Anderson testified that this damage was of recent origin. Moreover, one of the straps securing the gas tank had been loosened. Based on Officer Anderson's training and experience as a narcotics interdiction officer, he suspected that narcotics might be transported above the tank in a hollow compartment. He decided to shine the flashlight between the wheel well and the gas tank. There he noticed the package. Based on these facts, the court finds that the cocaine was in plain view and assuming Gant's consent was involuntary, the officers nonetheless did not violate Gant's Fourth Amendment rights. Alternatively, even speculating that the contraband was not in plain view because it was wrapped in duct tape, the court finds that at the time Anderson saw the package the officer had probable cause to suspect Gant was in possession of cocaine and could lawfully take Gant into custody. *Cf. United States v. Sanders,* 631 F.2d 1309 (8th Cir.1980) (finding probable cause that brown package in plain view contained drugs after examining totality of circumstances).

For all of the above reasons, Gant's motion to suppress is DENIED.