### UNITED STATES of America

v.

### Richard Angelo ZUCCO.

### No. 1:94–CR–69.

United States District Court,
E.D. Texas,
Beaumont Division.

Aug. 10, 1994.

---

Keith F. Giblin, Asst. U.S. Atty., for plaintiff.

Lewis Dickson, Houston, TX, for defendant.

## MEMORANDUM OPINION
## AND ORDER

COBB, District Judge.

A routine traffic stop of a recreational vehicle on Interstate Highway 10 ultimately revealed 200 kilograms of cocaine. The Defendant, Richard Angelo Zucco, has moved to suppress the cocaine. Having conducted a hearing on the matter, the Court is of the opinion that the motion to suppress should be denied.

### I.

The Court makes the following findings of fact for purposes of the motion to suppress. On April 29, 1994, Officers David Froman and Jerry LaChance of the Beaumont, Texas Police Department were patrolling Interstate 10 eastbound. At approximately 10:32 a.m., Officer Froman observed a recreational vehicle [RV] in the right lane veer onto the paved shoulder three times within a short period. The officers activated their emergency lights and stopped the vehicle.

Froman approached the driver and asked him for a license. The driver stepped out of the vehicle and produced a Virginia driver's license which identified him as Richard Zucco. Froman told Zucco that he initiated the stop because Zucco had veered onto the shoulder. Zucco explained that the wind made it difficult to remain in a single lane.

Based on Zucco's explanation, Froman chose to issue him a warning citation. While Froman was filling out the warning citation, Officer LaChance, who was inside the squad car, immediately began to run a license and warrant check on Zucco. Froman completed the warning citation and asked Zucco to sign it. While he was completing the form, Froman asked Zucco general questions about his profession and recent whereabouts. Zucco's responses to the questions raised Froman's suspicion and he decided to seek Zucco's consent to search the vehicle.

Froman returned to his car and asked LaChance to prepare a standardized Beaumont "Consent to Search" form. After diligently transmitting the information for the license and warrant checks, LaChance stepped out of the car and began to prepare

the form. Meanwhile, Froman asked for, and received, Zucco's oral consent to search the vehicle. LaChance then thoroughly explained the consent to search form to Zucco, including his right to refuse consent. Zucco signed the form and initialed the provisions which indicated his right to refuse consent and that the officers had not coerced his consent. LaChance then returned to the car, where approximately 1–2 minutes later, he noticed that the computer checks had returned. Consequently, this court finds, based on the evidence and testimony of the witnesses, that the license checks returned either during Zucco's written consent to the search or shortly thereafter.[1]

After Zucco signed the form, Officer Froman began to search the recreational vehicle. Froman removed the bottom drawer of the kitchen cabinet and discovered a tape wrapped package on the floor under the cabinet. After locating the suspicious package, Froman got out of the vehicle and immediately placed Zucco under arrest. He then inserted his pocket knife blade through the wrappings and observed what he considered to be cocaine.[2]

LaChance radioed Officer Clara Rivers to meet him at the Beaumont Police Department Narcotics Office with her certified drug dog, Weils. LaChance then departed for the office in the RV, while, Froman, driving the squad car, transported Zucco to the Jefferson County Jail for processing.

Officer Rivers arrived at the Narcotics office at approximately 11:15 a.m. and met LaChance. She initially lead her drug detection dog, Weils, around the RV. The dog expressed interest in the back of the vehicle. Upon entering the vehicle, Weils immediately proceeded to the bathroom, which is located in the rear of the vehicle and approximately six feet from the kitchen. Once in the bathroom, Weils "alerted" on the bathroom cabinets, the bathroom mirror, the floor between the toilet and the cabinet, the area between the toilet and the bathtub, and in the bathtub itself.

Rivers informed LaChance of the alerts, noting that, in her opinion, he "really needed to check in the bathroom area."[3] LaChance lifted the carpet in the bathroom to check for secret compartments. Finding none, he awaited the arrival of Froman. Froman arrived shortly thereafter and the two began investigating the vehicle's bathroom area. On a wall adjacent to the bathroom, the officers noticed freshly nicked screws and other signs that the molding and paneling had been removed recently. The officers removed the paneling, and with the aid of a pry tool, peered into the cavity behind the wall. They discovered a large cache of cocaine packages, which they recovered after the wall was removed.[4] The officers also located cocaine under the paneling in the bathtub area and in a compartment between the bathroom and the back door. Altogether, the cocaine weighed 200 kilograms.

## II.

■ The defendant initially argues that this court should apply Texas law in deciding the motion to suppress. The Fifth Circuit has addressed and rejected this argument:

The question that a federal court must ask when evidence secured by state officials is to be used as evidence against a defendant accused of a Federal offense is whether the actions of the state officials in securing the evidence violated the Fourth Amendment to the United States Constitution. This is so because, absent an exception, the exclusionary rule requires that evidence obtained in violation of the Fourth Amendment be suppressed. The exclusionary rule was created to discourage violations of

---

1. LaChance, relying on the squad car's clock, indicated 10:39 a.m. on the consent to search form. According to the Parties' Stipulation of Fact, the NCIC check returned at 10:40 a.m.

2. The package weighed approximately 1 kilogram.

3. Officer Rivers, Suppression Hearing at 219.

4. After removing the wall adjacent to the bathroom, the officers realized that the cache was accessible through the bathroom mirror. The mirror, which appeared to be attached directly to the bathroom wall was in fact mounted on hidden hinges. The secret compartment could be opened by unscrewing two screws located on the wall the officers removed.

the Fourth Amendment, not violations of state law. *United States v. Walker*, 960 F.2d 409, 415 (5th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 443, 121 L.Ed.2d 362 (1992).

Consequently, this court looks to Federal law to determine whether the Fourth Amendment has been violated. *Id.*

■ Under *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 1878–79, 20 L.Ed.2d 889 (1968), the judicial inquiry into the reasonableness of a search or seizure "is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." This test applies to cases in which motorists are stopped for violating traffic laws. *United States v. Kelley*, 981 F.2d 1464, 1467 (5th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 2427, 124 L.Ed.2d 647 (1993).

■ The initial stop of the vehicle by Officers Froman and LaChance was justified. Under Texas traffic law, a driver "shall drive as nearly as practical entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." Tex.Rev.Civ.Stat.Ann. art. 6701d, § 60(a) (Vernon 1977). Therefore, the Officers justifiably stopped Zucco when Froman observed him veer onto the shoulder three times. Consequently, the traffic stop satisfied the first prong of the *Terry* test.

■ Similarly, the roadside questioning did not violate Zucco's rights. Police questioning, even on a subject unrelated to the purpose of the stop is neither a seizure nor a Fourth Amendment violation. *United States v. Shabazz*, 993 F.2d 431, 436 (5th Cir.1993).

■ The focus of the *Terry* inquiry becomes, therefore, whether the physical detention of the defendant exceeded the stop's original scope. *Shabazz*, 993 F.2d at 437. Zucco argues that the officers were required to end the traffic stop once he explained that the wind caused him to veer off the road. The Court rejects this argument. Froman personally observed Zucco veer onto the shoulder three times. Consequently, he believed, as would any objectively reasonable officer, that Zucco had violated Texas traffic law and could be issued a citation. For that reason, the stop was valid. It is clear "that in a valid traffic stop, an officer can request a driver's license, insurance papers, run a computer check thereon, and issue a citation." *Id.*[5] The questioning and request for, and receipt of, consent to search occurred while the officers were awaiting the results of the computer check on Zucco's license. Because the detention did not exceed the original scope of the stop, the second prong of *Terry* is satisfied and the detention was permissible. *See Shabazz*, 993 F.2d at 437.[6]

■ The defendant also claims that the traffic stop was, in effect, an unconstitutional pretext to enable the officers to detain him in an attempt to find narcotics. Under *United States v. Causey*, 834 F.2d 1179 (5th Cir. 1987) (en banc), this court must apply an objective standard when reviewing the conduct of police officers: "[S]o long as police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry." *Causey*, 834 F.2d at 1184. When Officers Froman and LaChance stopped the defendant, they were doing no more than they were objectively authorized to do under Texas traffic law. Whether they were in fact looking for drugs is irrelevant. *See also United States v. Gallo*, 927 F.2d 815, 818–819 (5th Cir.1991) (officers were authorized to stop vehicle for traffic violation, even

---

**5.** The Court declines the defendant's invitation to employ the Fourth Amendment to micromanage the officers actions when the length of the traffic stop was reasonable. *See United States v. Reginald Gant*, 858 F.Supp. 74 (E.D.Tex.1994). For that reason, the fact that Froman issued a warning ticket before the completion of the computer checks is simply of no Constitutional moment.

**6.** Even if this court were to find either that Zucco's explanation ended the justification for the stop or that the license checks had returned before consent was obtained, the knowing and voluntary nature of Zucco's consent would be sufficient in this case to cleanse any improper pre-consent detention. *See United States v. Ruigomez*, 702 F.2d 61, 65 (5th Cir.1983).

if officers' subjective intent was to further narcotics investigation); *United States v. Haskins,* 773 F.Supp. 965, 968 (E.D.Tex. 1991), *aff'd* 983 F.2d 1061 (5th Cir.1993) (table) (Officers' subjective intent irrelevant). The defendant's objections as to the possible subjective intent of Officers Froman and LaChance are therefore without merit.

■ The Defendant next maintains that his consent to the search should be found invalid. This Court makes two separate inquiries in analyzing an individual's consent to a search: whether the defendant's consent was voluntary, and whether the search was within the scope of the consent. *United States v. Coburn,* 876 F.2d 372 (5th Cir.1989).

■ Six factors guide this Court's determination of whether the consent to search was voluntary: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. *United States v. Olivier–Becerril,* 861 F.2d 424, 426 (5th Cir.1988). Although all of the factors are relevant, none is dispositive or controlling of the voluntariness issue. *Id.* Zucco was not free to leave while the computer check on the license was pending. Nevertheless, Zucco would believe that his release was imminent: Officer Froman was issuing a warning ticket and would presumably release him after the completion of the computer checks. Nor did Officers LaChance and Froman employ any coercive or deceptive tactics to procure Zucco's consent. Moreover, Zucco was cooperative during the stop and there is no evidence of any antagonism. Furthermore, Officer LaChance explained the standardized Beaumont "Consent to Search" consent form, including the provision that informed Zucco his right to refuse consent to the search. Zucco read the form, signed it, and initialed the

right to refuse consent and lack of coercion provisions. Although the record is silent on Zucco's education, the court finds that Zucco could and did understand the form and its implications. Finally, it is unclear whether Zucco believed that incriminating evidence would be found during the search. Perhaps he believed that the cocaine would not be found because it was so cleverly hidden. In any event, considering the factors as a whole, the court finds that Zucco's consent to the search was voluntary.

■ As a second element, the search must be within the scope of the consent given. *Coburn,* 876 F.2d 372, 374. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 1803–04, 114 L.Ed.2d 297 (1991). Under this test, it is clear that the roadside search did not exceed the scope of Zucco's consent. The Beaumont Police "Consent to Search" form signed by Zucco gave Officers Froman and LaChance permission to search the "vehicle ... including the containers and contents located therein." A reasonable person would have understood the consent to cover the search of the vehicle's kitchen cabinets; Zucco's argument to the contrary must therefore fail.[7]

Zucco also contends that the search of the vehicle at the narcotics office exceeded the scope of his consent because the officers removed the wall adjacent to the bathroom. The court need not address this argument. Because the officers had probable cause to search the vehicle and its bathroom area, *See infra,* they could justifiably conduct a thorough, if damaging, search regardless of Zucco's consent or objection.

■ As his next point, Zucco contends that the officers did not have probable cause to believe cocaine was present in the hidden areas that required structural alteration to

---

7. *See also United States v. Rich,* 992 F.2d 502 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 348, 126 L.Ed.2d 312 (1993) (Under the circumstances, a reasonable person would have interpreted an affirmative response to officer's request "to have a look in" suspect's vehicle as the equivalent of general consent to search the automobile and its contents, including the suspect's luggage).

access. This argument has no merit. The roadside discovery of the cocaine and the dog alert in the bathroom area gave the officers probable cause to search the area and seize any cocaine or other contraband. *United States v. Seals*, 987 F.2d 1102, 1107 (5th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 155, 126 L.Ed.2d 116 (1993) (discovery of crack pipe); *United States v. Gonzalez–Basulto*, 898 F.2d 1011, 1013 (5th Cir.1990) (dog alert). The dog alert, coupled with the nicked screws and other evidence of recent tampering with the wall adjacent to the bathroom unquestionably provided the officers with reasonable justification to remove the wall's paneling. *See United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."); *Carroll v. United States*, 267 U.S. 132, 151, 45 S.Ct. 280, 284, 69 L.Ed. 543 (1925) (search which located contraband whiskey in the upholstery of automobile seats held not to violate the Fourth Amendment).

Finally, Zucco argues that the Officers should have obtained a search warrant before the final search of the vehicle at the Beaumont narcotics office. Specifically, he argues that "the [Supreme C]ourt indeed has never held that a motor home's interior walls … is [sic] the functional equivalent of a container." [8] This statement misapprehends the Supreme Court's Fourth Amendment jurisprudence: the Court authorized warrantless structural searches of automobiles based on probable cause long before it allowed warrantless searches of containers located inside those automobiles. *Compare Carroll v. United States*, 267 U.S. 132, 151, 45 S.Ct. 280, 284, 69 L.Ed. 543 (1925) (warrantless search based on probable cause which located contraband whiskey in the upholstery of automobile seats held not to violate the Fourth Amendment), *with Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) (police required to obtain a search warrant before searching luggage taken from a car notwithstanding the existence of probable cause to believe that the luggage contained contraband).

■ Nevertheless, Zucco's argument has become a distinction without a difference. In *California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991), the court announced a unitary rule for warrantless automobile searches: "The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *Id.* at 580, 111 S.Ct. at 1991. Moreover,

[t]he scope of a warrantless search based on probable cause is no narrower—and no broader—than the scope of a search authorized by a warrant supported by probable cause. Only the prior approval of a magistrate is waived; the search is otherwise as the magistrate could authorize … *United States v. Ross*, 456 U.S. at 823, 102 S.Ct. at 2172.

Finally, Zucco's recreational vehicle fits within the automobile exception to the warrant requirement. *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). After the initial roadside discovery of cocaine and the alert by the drug dog, the officers had probable cause to believe that additional drugs were located in the vehicle. *See supra*. The caselaw precludes, and this Court refuses to create, a Constitutional safe harbor for those who surreptitiously hide contraband in a vehicle's structural components.

■ Moreover, the fact that the vehicle was in police custody during the warrantless search is irrelevant. As already discussed, once Froman located the initial package of cocaine, he had probable cause to believe that the vehicle contained contraband. *See United States v. Seals*, 987 F.2d 1102, 1107 (5th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 155, 126 L.Ed.2d 116 (1993). Moreover, because the vehicle was located on Interstate 10 and could easily be moved, this court finds that exigent circumstances existed at the time Froman discovered the first package. Consequently, no warrant was required for the later search. "A vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it

---

8. Zucco's Trial Brief in Support of Motion to Suppress, at 22.

contains contraband, and there is no requirement of exigent circumstances to justify such a warrantless search." *United States v. Johns,* 469 U.S. 478, 484, 105 S.Ct. 881, 885, 83 L.Ed.2d 890 (1985). *See also Michigan v. Thomas,* 458 U.S. 259, 261, 102 S.Ct. 3079, 3080–81, 73 L.Ed.2d 750 (1982) (per curiam) ("[T]he justification to conduct such a warrantless search does not vanish once the car has been immobilized."); *United States v. Cisneros–Mireles,* 739 F.2d 1000, 1005 (5th Cir.1984) ("Finally, we note that any argument that exigent circumstances would have ceased once the DEA agents seized the Buick, and that they should have therefore obtained a warrant after the seizure but prior to any search, has clearly been rejected by the Supreme Court.") Moreover, there is no requirement that the warrantless search occur contemporaneously with its lawful seizure. *Texas v. White,* 423 U.S. 67, 68, 96 S.Ct. 304, 305, 46 L.Ed.2d 209 (1975); *See also United States v. Johns,* 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985) (warrantless search of packages three days after their seizure from vehicle held reasonable). Consequently, this Court holds that the warrantless search of the vehicle after its relocation to the Beaumont narcotics office did not offend the Constitution.

### III.

Accordingly, in light of the above analysis, the court finds that the search and seizure in question did not violate the Constitution. Zucco's Motion to Suppress is therefore DENIED.

It is so ORDERED.